THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB

Mailed: October 26, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re 1175856 Ontario Ltd.[1]

_____

Serial No. 78442207

_____

Mark I. Feldman of DLA Piper Rudnick Gray Cary US LLP for 1175856 Ontario Ltd.

Christopher M. Ott, Trademark Examining Attorney, Law Office 116 (Michael W. Baird, Managing Attorney).[2]

_____

Before Walters, Bucher and Kuhlke, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

1175856 Ontario Ltd. has filed an application to

register, on the Principal Register, the mark shown below,



_____

[1] The original applicant WSI Holdings LLC changed its name to WSI Holdings Ltd and subsequently assigned the application to 1175856 Ontario Ltd. These transactions are recorded at reel/frame numbers 2935/0401 and 3043/0871 respectively.

[2] The application was originally examined by another examining attorney, but was subsequently reassigned to the above-noted attorney to prepare the appeal brief.

for services ultimately recited as "Franchising services, namely, offering technical assistance in the establishment and/or operation of businesses that provide website development, Internet marketing services, and design and web hosting services" in International Class 35; "Training in the field of Internet and websites used for businesses" in International Class 41; and "Technical consulting services for businesses in the field of Internet and website use; website development and design; and web hosting services namely hosting the websites of others on a computer server for a global computer network" in International Class 42.  The application was filed on June 28, 2004, based upon allegations of first use and use in commerce on October 23, 2001.  15 U.S.C. §1051(a).

The examining attorney has refused registration of the mark on the ground that the mark shown in the drawing does not agree with the use of the mark on the specimens.  In view of the differences between the mark sought to be registered and the mark shown in the specimens, the examining attorney required that applicant submit substitute specimens properly showing the mark as used or amend the filing basis of the application to Section 1(b).  In addition, the examining attorney stated that applicant may not submit an amended drawing to conform to the display

2

of the mark on the specimens because the character of the mark would be materially altered.

When the refusal was made final, applicant appealed and briefs have been filed. We reverse the refusal to register.

The sole issue before us is whether the mark, as it appears in the drawing in the application, is a substantially exact representation of the mark as used on the specimens. Trademark Rule 2.51(a), 37 C.F.R. §2.51(a).

The mark as it appears on applicant's specimens is reproduced below.



As described by the applicant the mark in the drawing consists "of the letters WSI and the Globe Design." Br. p. 4. Applicant states that "[t]hese elements comprise the dominant feature of the mark and appear on the specimen...[and] together form a distinct commercial impression." With regard to the curve appearing in the specimens applicant states that it "is a fanciful design element without any apparent meaning and without any conceptual relationship to the letters WSI or the Globe

Design [and] makes it[s] own, separate, distinguishable commercial impression."  Br. p. 4.

The examining attorney contends that:

The elements WSI, the globe design, and the curved arc are so merged together in the presentation of applicant's mark on the specimen that the wording WSI and the globe design cannot be regarded as a separable element creating a separate and distinct commercial impression.  The lettering and the design elements are presented in a unitary form with the arc curving around the lettering and touching the globe, thereby presenting an impression of movement both in the elements of the mark and in relation to the underlying business.  Thus, the applied-for mark, WSI (and globe design), does not form a commercial impression separate and distinct from the composite WSI (with globe and arc designs) as actually used.  Therefore, the applied-for-mark, as used on the specimens, does not function as a mark for the recited services in and of itself.  As such, the mark is a mutilation of the mark as depicted on the specimen.  Br. unnumbered p. 8.

Thus, the specific issue in this case concerns the omission of the curve design element that appears in the specimens.  The question is whether the mark sought to be registered is a "mutilation" or an incomplete presentation of the mark that is actually used.

It is well settled that an applicant may seek to register any portion of a composite mark if that portion presents a separate and distinct commercial impression which indicates the source of applicant's goods or services and distinguishes applicant's goods or services from those

4

of others.  See Institut National des Appellations

D'Origine v. Vintners International Co. Inc., 958 F.2d

1574, 22 USPQ2d 1190, 1197 (Fed. Cir. 1992); and Chemical

Dynamics Inc., 939 F.2d 1569, 5 USPQ2d 1828 (Fed. Cir.

1988).  If the portion of the mark sought to be registered

does not create a separate and distinct commercial

impression, the result is an impermissible mutilation of

the mark as used.

As noted by our primary reviewing Court in Chemical

Dynamics, supra, 5 USPQ2d at 1829, quoting 1 J.T. McCarthy,

Trademarks and Unfair Competition §19:17 (2d ed. 1984), the

issue of mutilation "all boils down to a judgment as to

whether that designation for which registration is sought

comprises a separate and distinct 'trademark' in and of

itself."  In making these determinations, we are mindful of

the fact that in an application under Section 1 of the

Trademark Act, the applicant has some latitude in selecting

the mark it wants to register.  TMEP §807.12(d) (4th ed.

April 2005).

We note the cases cited by applicant in support of its

position.  While these cases are helpful to understand the

general concepts, each case presents its own unique

circumstances and requires a judgment as to that particular

designation.  For example, while In re Schecter Brothers

Modular Corp., 182 USPQ 694 (TTAB 1974) (drawing of RAINAIRE and design substantially exact to RAINAIRE PRODUCTS and design with additional shadowing design) does provide a similar circumstance in that the specimen included an additional design element, In re Berg Electronics, Inc., 163 USPQ 487 (TTAB 1969) (drawing GRIPLET in stylized form is substantially exact to GRIPLET BERG in stylized form) is different inasmuch as that case involved the appearance of a house mark on the specimen.[3] In this case, we agree with applicant that the lettering and globe design shown in the drawing create a separate commercial impression apart from the curve design. The fact that the curve design is in close proximity to the globe design and lettering does not dictate that the globe and lettering cannot be registered as a separate mark. While proximity is a consideration, it is the overall commercial impression of the mark that is controlling. Here, the lettering WSI and the globe design, serving as part of the letter I, join to convey to the consumer the brand name of applicant's services and act together as an indication of source separate from the curve design.

---

[3] As noted by the examining attorney, applicant's claim of ownership of another pending application is of no probative value inasmuch as the application was not made of record.

Accordingly, we find that the applied-for mark creates a separate and distinct commercial impression apart from the curve design, and that it therefore may be registered as a mark.

In view of the foregoing, we find that the mark shown on the drawing is a substantially exact representation of the mark shown on the specimens.

**Decision**:  The refusal to register is reversed.